UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHRISTOPHER PAGANO, SR.,

                        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

Case # 16-CV-6537-FPG

DECISION AND ORDER

Christopher Pagano, Sr. ("Pagano" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied his application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 14, 15. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

**BACKGROUND**

On April 30, 2013, Pagano applied for SSI with the Social Security Administration ("the SSA"). Tr.[1] 124-29. He alleged disability since November 1, 2012 due to degenerative disc disease, lower back fractures, high blood pressure, asthma, and depression. Tr. 159. On November 13, 2014, Pagano and a vocational expert ("VE") testified at a hearing via videoconference before Administrative Law Judge Elliott Bunce ("the ALJ"). Tr. 27-48. On February 10, 2015, the ALJ

---

[1]       References to "Tr." are to the administrative record in this matter.

1

issued a decision finding that Pagano was not disabled within the meaning of the Act. Tr. 10-22. On July 13, 2016, the Appeals Council denied Pagano's request for review. Tr. 1-6. Thereafter, Pagano commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of

impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I.     The ALJ's Decision

The ALJ's decision analyzed Pagano's claim for benefits under the process described above. At step one, the ALJ found that Pagano had not engaged in substantial gainful activity since the application date. Tr. 12. At step two, the ALJ found that Pagano has the following severe impairments: degenerative disc disease with steroid-induced osteoporosis of the lumbar vertebrae, chronic obstructive pulmonary disorder, a ruptured Achilles tendon, and depression. *Id.* At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 12-15.

Next, the ALJ determined that Pagano retained the RFC to perform sedentary work[2] with additional limitations. Tr. 15-21. Specifically, the ALJ found that Pagano can occasionally climb, balance, stoop, kneel, crouch, and crawl; requires an assistive device to walk; must avoid exposure to poor ventilation and extreme dust, humidity, and temperatures; and can perform only simple, routine, and repetitious tasks with one- or two-step instructions. Tr. 15.

At step four, the ALJ relied on the VE's testimony and concluded that Pagano cannot perform his past relevant work. Tr. 21. At step five, the ALJ relied on the VE's testimony and found that Pagano can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 21-22. Specifically, the VE testified that Pagano could work as an account clerk, telephone information clerk, and assembler. Tr. 22. Accordingly, the ALJ concluded that Pagano was not "disabled" under the Act. *Id.*

---

[2]     "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

## II. Analysis

Pagano argues that remand is required because the ALJ violated the treating physician rule. ECF No. 14-2 at 4-10. Specifically, Pagano asserts that the opinions of his treating physician Andrew Reese, M.D. were entitled to controlling weight and that the ALJ failed to provide the requisite "good reasons" for discounting his opinions. *Id.*

### A. Dr. Reese's Opinions

Dr. Reese began treating Pagano on April 11, 2013. Tr. 300. On August 2, 2013, Dr. Reese opined that Pagano is "very limited" in his ability to walk, stand, lift, carry, push, pull, bend, and climb; "moderately limited" in his ability to sit; and unlimited in his ability to see, hear, speak, and use his hands. Tr. 299. He noted that Pagano cannot work at a job that requires him to lift, stand, or carry. *Id.* Dr. Reese concluded that Pagano's impairments have lasted or can be expected to last for at least 12 months. *Id.*

On January 27, 2014, Dr. Reese opined that Pagano is "very limited" in his ability to lift, carry, push, pull, and bend; "moderately limited" in his ability to walk, stand, sit, and climb; and unlimited in his ability to see, hear, speak, and use his hands. Tr. 320. He further opined that Pagano cannot work at a job that requires him to lift, engage in prolonged standing, kneel, or bend, and that he is "100% disabled." *Id.* Dr. Reese concluded that Pagano's impairments have lasted for more than 12 months and that his "condition is expected to progress, not improve." *Id.*

On September 29, 2014, Dr. Reese again indicated that Pagano's impairments have lasted or can be expected to last for at least 12 months. Tr. 322. He opined that during a typical workday Pagano's pain or other symptoms would constantly interfere with the attention and concentration needed to perform even simple work tasks. *Id.* Dr. Reese also opined that Pagano can sit and stand for 10 minutes at one time; can sit, stand, and walk for less than two hours total in an eight-

hour workday; must be able to walk around for five minutes every 15 minutes during an eight-hour workday; and requires a job that permits him to shift positions at will from sitting, standing, and walking. Tr. 323. Dr. Reese indicated that Pagano requires hourly unscheduled five-minute breaks during an eight-hour workday. *Id.* He also noted that Pagano could occasionally climb stairs, could rarely twist, and could not stoop, bend, crouch, squat, or climb ladders. Tr. 324. Dr. Reese opined that Pagano's impairments are likely to produce "good days" and "bad days" and that he is likely to be absent from work due to impairments or treatment more than four days per month. *Id.* Dr. Reese concluded that Pagano is incapable of sustaining full time work. *Id.*

      **B.**      **The Treating Physician Rule & the ALJ's Evaluation of Dr. Reese's Opinion**

The "treating physician rule" is "a series of regulations set forth by the Commissioner . . . detailing the weight to be accorded a treating physician's opinion." *De Roman v. Barnhart*, No. 03 Civ. 0075 (RCC) (AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003) (citation omitted); 20 C.F.R. § 416.927. Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). While an ALJ may discount a treating physician's opinion if it does not meet this standard, the ALJ must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

Even when a treating physician's opinion is not given "controlling" weight, the ALJ must still consider several factors in determining how much weight it should receive. The ALJ must

consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); 20 C.F.R. § 416.927(c)(1)-(6).

Here, the ALJ concluded that Dr. Reese's opinions were entitled to only "little weight" because they: (1) do not account for Pagano's "generally conservative" treatment; (2) were inconsistent with the consultative examiner's findings; (3) were inconsistent with other medical evidence of record; (4) relied "heavily" on Pagano's subjective complaints; and (5) went to issues reserved to the Commissioner. Tr. 19-20. These reasons are addressed in turn below.

### 1. Conservative Treatment

The ALJ rejected Dr. Reese's opinions in part because they do not account for Pagano's "generally conservative" treatment. Tr. 19-20 (citing Tr. 229-34, 301-16). However, this is not a "good reason" to reject a treating physician's opinion. *See Morris v. Colvin*, No. 15-CV-5600 (JFB), 2016 WL 7235710, at *9 (E.D.N.Y. Dec. 14, 2016) (finding that the ALJ erred when he relied on the treating physician's recommendation for conservative treatment as substantial evidence that the plaintiff was not disabled). The Second Circuit has noted that discounting a treating physician's opinion based on the plaintiff's conservative treatment "falls far short of the standard for contradictory evidence required to override the weight normally assigned the treating physician's opinion." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (finding that "the district court improperly characterized the fact that [the treating physician] recommended only conservative physical therapy . . . as substantial evidence that plaintiff was not physically

7

disabled"). This is because "[n]either the trial judge nor the ALJ is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion." *Id.* (citing *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)). Accordingly, the Court finds that Pagano's conservative course of treatment does not constitute a "good reason" for the ALJ to reject Dr. Reese's opinions.

### 2. Inconsistency with Consultative Examination

The ALJ also rejected Dr. Reese's opinions because "a consultative examination showed Pagano was capable of walking and standing." Tr. 19 (citing Tr. 289-93). Specifically, consultative examiner Donna Miller, D.O. indicated that Pagano had a normal gait, could walk on his heels and toes without difficulty, had a normal stance, did not use an assistive device to walk, and could rise from a chair without difficulty. Tr. 290-91. He had full range of motion in his hips, knees, and ankles bilaterally. Tr. 291. Dr. Miller did not prescribe any functional limitations as to walking and standing. Tr. 292. The ALJ afforded "some weight" to Dr. Miller's opinion that Pagano has mild to moderate limitations in heavy lifting, bending, and carrying, and must avoid dust, irritants, and tobacco exposure. Tr. 20 (citing Tr. 292).

Dr. Reese, on the other hand, indicated that Pagano was "moderately" to "very" limited in his ability to walk and stand and could not engage in prolonged standing in the work environment. Tr. 299-300, 320. He also opined that Pagano could stand for only 10 minutes at a time and could stand and walk for less than two hours total in an eight-hour workday. Tr. 323. Dr. Reese also indicated that Pagano must be able to shift positions from sitting, standing, and walking at will. *Id.*

"Even where a treating physician's opinion is not entitled to 'controlling weight,' it is generally entitled to 'more weight' than the opinions of non-treating and non-examining sources."

8

*Hamm v. Colvin*, No. 16CV936(DF), 2017 WL 1322203, at *17 (S.D.N.Y. Mar. 29, 2017) (citations omitted); *see also* 20 C.F.R. § 416.927(c)(2); Social Security Ruling 96-2p, Policy Interpretation Ruling Titles II & XVI: Giving Controlling Weight to Treating Source Medical Opinions (S.S.A. July 2, 1996) ("In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.").[3] Rather, a consultative examiner's opinion is generally entitled to "little weight," because their examinations "are often brief, are generally performed without benefit or review of the claimant's medical history, and, at best, only give a glimpse of the claimant on a single day. Often, consultative reports ignore or give only passing consideration to subjective symptoms without stated reasons." *Hamm*, 2017 WL 1322203, at *17 (citing *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009) and *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 55 (2d Cir. 1992)).

Here, the ALJ provided no specific reasons for relying on Dr. Miller's findings over Dr. Reese's. Instead, he merely stated that "a consultative examination showed Pagano was capable of walking and standing." Tr. 19. The ALJ failed to recognize that Dr. Reese had the benefit of treating Pagano on at least three occasions for over one year,[4] while Dr. Miller examined Pagano only once. Although Dr. Miller found that Pagano was "capable of walking and standing" (Tr. 19), Dr. Reese repeatedly opined that Pagano had moderate to significant limitations in those areas (Tr. 299-300, 320, 323). Moreover, as the ALJ pointed out himself, Dr. Miller's opinion was rendered before Pagano's ankle surgery and therefore does not account for his deteriorating condition. Tr. 18, 20, 289-92, 325-26. A stale medical opinion, like one that is rendered before a

---

[3] The Court notes that S.S.R. 96-2p was recently rescinded, however, the rescission is only effective for claims filed on or after March 27, 2017. *See* Rescission of Social Security Rulings 96-2p, 96-5p, & 06-3p, 2017 WL 3928305, at *1 (S.S.A. Mar. 27, 2017). Therefore, S.S.R. 96-2p is still relevant for the purposes of Pagano's claim, which was filed on April 30, 2013.

[4] According to the administrative transcript, Dr. Reese treated Pagano on April 11, April 19, and May 6, 2013. Tr. 271-78.

surgery, is not substantial evidence to support an ALJ's finding. *See Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (citation omitted); *see also Girolamo v. Colvin*, No. 13-CV-06309 (MAT), 2014 WL 2207993, at *7-8 (W.D.N.Y. May 28, 2014) (ALJ should not have afforded great weight to medical opinions rendered before plaintiff's second surgery); *Jones v. Comm'r of Soc. Sec.*, No. 10 CV 5831(RJD), 2012 WL 3637450, at *2 (E.D.N.Y. Aug. 22, 2012) (ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition").

Accordingly, the Court finds that Dr. Miller's contradictory findings as to standing and walking do not constitute "good reasons" to discount Dr. Reese's opinions.

### 3. Other Medical Evidence of Record

The ALJ also rejected Dr. Reese's opinions because Pagano "generally remained able to walk with a single-ended cane," his "low back studies revealed degenerative changes and fractures, but no displacement of nerve roots, including the S1 root," and his "neurological signs were generally intact." Tr. 19 (citing Tr. 229-34, 289-93, 294-98, 325-63).

The ALJ's own interpretation of raw medical data does not justify rejecting a treating physician's opinion. *See Morris*, 2016 WL 7235710, at *9 ("[T]he ALJ's reliance on [the treating physician]'s medical notes indicating that plaintiff had a normal gait and normal motor and sensory exams does not justify his rejection of the treating physicians' opinions."). When an ALJ analyzes a treating physician's report, he "cannot arbitrarily substitute his own judgment for competent medical opinion." *Rosa*, 168 F.3d at 79 (citations omitted). In *Rosa*, the ALJ rejected the treating physician's opinion based in part on the physician's underlying notes, which did not indicate that the claimant suffered muscle spasms. *Id.* at 76. The Second Circuit held that the ALJ violated the

treating physician rule because "as a lay person, the ALJ simply was not in a position to know whether the absence of muscle spasms would in fact preclude the disabling loss of motion described by [the treating physician] in his assessment." *Id.* at 79 (brackets omitted). The Court concluded that the ALJ erred because he rejected the treating physician's opinion by "improperly set[ting] [his] own expertise against that of the treating physician." *Id.*; *see also Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the [SSA], must be careful not to succumb to the temptation to play doctor.").

The ALJ committed the same error here. He also was "not in a position to know" whether Pagano's ability to walk with a cane, the findings of his low back studies, and his intact neurological signs would preclude the limitations that Dr. Reese imposed. Thus, these objective findings do not constitute "good reasons" to reject Dr. Reese's opinions.

### 4. Pagano's Subjective Complaints

The ALJ also rejected Dr. Reese's opinions because they rely "heavily on [Pagano]'s subjective complaints instead of the more objective evidence." Tr. 20. However, reliance on Pagano's subjective complaints is "not a valid reason" for rejecting Dr. Reese's opinions. *Mahon v. Colvin*, No. 15-CV-398-FPG, 2016 WL 3681466, at *4 (W.D.N.Y. July 6, 2016); *see also Green-Younger*, 335 F.3d at 107 (holding that a doctor's reliance on the plaintiff's subjective complaints "hardly undermines his opinion as to her functional limitations" because "a patient's report of complaints, or history, is an essential diagnostic tool") (citation omitted); *Hussain v. Astrue*, No. 07-CV-210C, 2008 WL 4724301, at *5 (W.D.N.Y. Oct. 24, 2008) (indicating that the consultative examiner's reliance on the plaintiff's subjective complaints "does not undermine the opinion") (citation omitted); *McCarty v. Astrue*, No. 5:05CV953LEK/GHL, 2008 WL 3884357,

11

at *6 (N.D.N.Y. Aug. 18, 2008) ("[The doctor's] reliance on Plaintiff's subjective complaints is not a valid basis for rejecting his opinion.")).

### 5. Issue Reserved to the Commissioner

Finally, the ALJ rejected Dr. Reese's opinions because two of those opinions "appear to have been made as part of [Pagano]'s applications for benefits under New York law, not under the differing standards of the Social Security Act." Tr. 20. The ALJ also noted that "the Social Security Act leaves the determination of whether a person is disabled solely to the Commissioner." *Id.*

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, and therefore a medical source's statement that a claimant is "disabled" or "unable to work" does not mean that the Commissioner must find that claimant disabled. 20 C.F.R. § 416.927(d)(1). However, the ALJ is still obligated to provide good reasons why he refused to credit a treating physician's findings even though the physician opined on an issue reserved to the Commissioner. *Newbury v. Astrue*, 321 F. App'x 16, 18 (2d Cir. 2009) (summary order) (finding that the district court erred when it held that, because the treating physician's opinion went to issues reserved to the Commissioner, the plaintiff was not entitled to an explanation of the reasons why the ALJ refused to credit the treating physician's findings). The Second Circuit has explained that:

> Reserving the ultimate issue of disability to the Commissioner relieves the [SSA] of having to credit a doctor's finding of disability, but it does not exempt [ALJs] from their obligation . . . *to explain why* a treating physician's opinions are not being credited. The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, even—and perhaps especially—when those dispositions are unfavorable.

*Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (emphasis added).

Here, as explained in detail above, the ALJ did not provide the requisite "good reasons" for discounting Dr. Reese's opinion. Even though two of Dr. Reese's opinions were not rendered specifically for Social Security purposes and he opined on the ultimate issue of disability, the ALJ erred when he failed to provide "good reasons" for rejecting those opinions.

**C.     Remedy**

District courts are authorized to affirm, reverse, or modify the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand for calculation of benefits is appropriate only in cases where the record "provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Butts v. Barnhart*, 388 F.3d 377, 385-86 (2d Cir. 2004). Courts must avoid "contribut[ing] any further to the delay of the determination of [a claimant's] application by remanding for further administrative proceedings" when such an instruction would prove unnecessary. *Diaz ex rel. E.G. v. Comm'r of Soc. Sec.*, No. 06-CV-530-JTC, 2008 WL 821978, at *8 (W.D.N.Y. Mar. 26, 2008).

Pagano argues that the Commissioner's decision should be reversed and that this matter should be remanded solely for the calculation of benefits because Dr. Reese's opinion is entitled to controlling weight and establishes that he is disabled. ECF No. 14-2, at 7. Specifically, Pagano asserts that Dr. Reese's opinion is supported by two lumbar spine MRIs, which indicate that "a moderately sized broad based disc bulge at the L5/S1 level appears to touch the crossing nerve root" and that "a lateral disc protrusion remains with no nerve root compression." *Id.* (citing Tr. 295-96, 362-63). Pagano also argues that Dr. Reese's opinion is supported by the objective medical evidence, which reveals that he "ambulated with an antalgic gait and walked with a cane

13

at all times," had positive straight leg testing, and ruptured his Achilles tendon. *Id.* (citing Tr. 232, 348, 351, 353).

Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger*, 335 F.3d at 106. All of Dr. Reese's opinions, however, are form opinions that lack supporting relevant evidence, such as medical signs and laboratory findings. Tr. 299-300, 320, 322-24; *see* 20 C.F.R. § 416.927(c)(3) (the SSA will give more weight to a medical opinion supported by relevant evidence, "particularly medical signs and laboratory findings"). The Court's review of the administrative transcript reveals only nine additional pages of medical records from Dr. Reese—a single page documenting Pagano's medication history (Tr. 203) and eight pages of treatment notes from office visits on April 11, April 19, and May 6, 2013 (Tr. 271-78). These notes are quite brief and do not further illuminate Dr. Reese's opinions. Moreover, the Court is not convinced that the lumbar spine MRIs and limited medical evidence that Pagano cites constitute "substantial evidence" in support of Dr. Reese's opinions, and the Court is not in a position to interpret complex medical evidence.

Although it is unclear based on the record before the Court whether Dr. Reese's opinions are entitled to controlling weight and therefore establish that Pagano is disabled, Pagano is still entitled to a proper analysis of Dr. Reese's opinions and, if appropriate, "good reasons" why those opinions must be rejected. Accordingly, the Court remands this case for further administrative proceedings.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 14) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 15) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000); 42 U.S.C. § 1383(c)(3). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 27, 2017
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court